OPINION
{¶ 1} Andrew Fraelich ("Fraelich") appeals the February 1, 2000 judgment entry of the Trumbull County Court of Common Pleas, Probate Division, ordering Fraelich, as executor of the estate of Paul Fraelich, to pay attorney fees and expenses in the amount of $393,966.55. For the reasons set forth below, we affirm in part and reverse in part the decision of the trial court in this matter.
 {¶ 2} On January 14, 1992, Paul Fraelich died. As a result of his death, his estate filed a medical malpractice suit. Richard Goldberg ("Goldberg") was retained as counsel by the estate to pursue this action. The matter proceeded to trial in 1996. At the conclusion of the trial, the trial court awarded $951,774.00 in damages. Goldberg received a check, dated December 5, 1996, from one of the defendants in the amount of $432,387.00 and a check, dated March 19, 1997, from the same defendant in the amount of $43,515.46. Goldberg also received a check, dated March 27, 1997, from the second defendant in the amount of $266,183.58. All three checks were issued payable to Fraelich and Goldberg.
 {¶ 3} Goldberg did not notify the estate of the payments, nor did he forward any of the funds to the estate. In January 1998, Goldberg sent Fraelich a letter concerning the estate's "outstanding claim" against the doctor. Goldberg stated that there were issues as to whether the doctor's insurance company had sufficient funds to pay all its claims. The letter concluded, "Obviously, all of this has substantially increase[d] the difficulty of our job as well as diminished the probability of our being able to successfully achieve full and fair compensation for your injuries."
 {¶ 4} In May 1999, the estate received $256,183.58 directly from one of the defendants. In June 1999, the estate filed a concealment action against Goldberg to recover the retained funds. Four days after the filing of the action, Goldberg forwarded $176,496.24 to Fraelich. After conducting a hearing, the trial court found Goldberg guilty of concealing assets of the estate. The court ordered Goldberg to "immediately pay $566,144.08 into the [e]state" and to "pay a statutory ten percent penalty [and] prejudgment interest from the date of taking until the assets were returned to the * * * estate." Neither party appealed the trial court's decision.
 {¶ 5} Goldberg did not pay the funds as ordered. Instead, Goldberg, as the result of a plea bargain in federal court involving numerous former clients, including the estate of Fraelich, agreed to establish a reimbursement fund through the court in the amount of $4.5 million. The record indicates that the trial court agreed to have any funds owed to the estate to be paid into the reimbursement fund, rather than into the probate court, and then re-distributed to the estate.
 {¶ 6} On September 23, 1999, Fraelich filed a notice of entry upon land for inspection to identify and inventory goods and chattels. On October 1, 1999, Goldberg filed a motion for protective order to preclude the entry upon land The trial court granted Goldberg's protective order that same day.
 {¶ 7} In November 1999, Goldberg moved for an expedited determination of attorney fees and expenses. The trial court conducted a hearing on the matter. Thereafter, the trial court found that, because Goldberg did not receive the proper approval from the court to enter a contingent fee contract with the estate, Goldberg only would be entitled to recover in quantum meruit. The court proceeded to find that $225 per hour was a reasonable hourly rate. Basing its determination on Goldberg's estimate of 1,400 hours, the trial court ordered the estate to pay the reimbursement fund established in federal court $315,000.00 for attorney fees and $78,966.55 in expenses.
 {¶ 8} Fraelich timely appealed and raises the following assignments of error:
 {¶ 9} "[1.] The Probate Court committed reversible error in awarding any fee to Goldberg until he had surrendered all of the assets of the estate that he had misappropriated.
 {¶ 10} "[2.] The Probate Court committed reversible error by awarding any fee to Goldberg given his failure to offer competent, credible evidence of hours he expended in representing the estate.
 {¶ 11} "[3.] The Probate Court erred by not holding that Goldberg's egregious breach of fiduciary duty precluded an award of fees to him in connection with his representation of the estate.
 {¶ 12} "[4.] The Probate Court erred by blocking the estate's efforts to execute on a judgment that is now eight months old."
 {¶ 13} In his brief, Goldberg asserted a cross-assignment of error challenging the trial court's jurisdiction to award the estate judgment on the wrongful death proceeds. A cross-assignment of error, however, can only be used to protect the judgment of the lower court. Maffitt v. Atlas Energy Group,Inc. (Apr. 14, 1989), 11th Dist. No. 4000, 1989 Ohio App. LEXIS 1370, at *6, citing Duracote Corp. v. Goodyear Tire RubberCo. (1983), 2 Ohio At.3d 160, 163.
 {¶ 14} In this case, the cross-assignment of error addresses the August 9, 1999 judgment entry awarding the estate judgment on the wrongful death proceeds, rather than the February 1, 2000 judgment entry granting attorney fees and expenses to Goldberg, the matter before the court at this time. Since Goldberg failed to appeal the trial court's August 9, 1999 decision, this court does not have jurisdiction to now address that decision. See Inre Harris, 1st Dist. No. C-020512, 2003-Ohio-672, at ¶ 9.
 {¶ 15} Moreover, the probate court did have jurisdiction to determine the reasonable amount of attorney fees for Goldberg's services in representing the estate in the wrongful death action. See Sup.R. 70(C); see, also, Trumpler v. Royer (1917),95 Ohio St. 194, paragraph two of the syllabus ("The allowance of fees for services rendered by attorneys employed by an executor or administrator * * * is a matter to be determined by the probate court."). It, therefore, cannot be argued that a ruling on Goldberg's cross-assignment would protect the judgment of the lower court in regards to Goldberg's attorney fees and expenses, an issue clearly within the jurisdiction of the probate court. We will, therefore, limit our discussion to Fraelich's assignments of error.
 {¶ 16} Since Fraelich's first three assignments of error challenge the award of attorney fees to Goldberg, they will be considered together. Fraelich argues that Goldberg must surrender the assets he concealed from the estate before being entitled to an award of attorney fees. Fraelich also argues that Goldberg did not submit sufficient evidence to establish the reasonableness of his fees. Fraelich finally argues that Goldberg's conduct in this case requires a fee forfeiture.
 {¶ 17} "The allowance of fees for services rendered by attorneys employed by an executor or administrator in the settlement of the estate * * * is a matter to be determined by the probate court." Royer, 95 Ohio St. 194, at paragraph two of the syllabus. "An award of attorney fees is within the discretion of the trial court." In re Guardianship of Hards, 11th Dist. No. 2002-L-054, 2003-Ohio-4224, at ¶ 13 (citation omitted). The probate court's determination of attorney fees will not be overturned absent an abuse of discretion. Id. (citation omitted).
 {¶ 18} An abuse of discretion consists of more than an error of law or judgment. Rather, it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Berk v. Matthews
(1990), 53 Ohio St.3d 161, 169 (citation omitted). Reversal, under an abuse of discretion standard, is not warranted merely because appellate judges disagree with the trial judge or believe the trial judge erred. Id. Reversal is appropriate only if the abuse of discretion renders "the result * * * palpably and grossly violative of fact and logic [so] that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." State v. Jenkins (1984),15 Ohio St.3d 164, 222 (citation omitted).
 {¶ 19} In this case, although Fraelich entered into a contingent fee agreement with Goldberg, an application to enter such an agreement was not filed with the probate court, nor was such an agreement ever approved by the probate court, as required by Sup.R. 71(I). Thus, the trial court did not abuse its discretion in proceeding under quantum meruit.
 {¶ 20} In determining the reasonable value of attorney fees in quantum meruit, the trial court should consider more than just the total number of hours worked. Reid, Johnson, Downes,Andrachik Webster v. Lansberry, 68 Ohio St.3d 570, 576,1994-Ohio-512; Roux v. Lonardo (Aug. 30, 1991), 11th Dist. No. 89-T-4302, 1991 Ohio App. LEXIS 4125, at *5. Rather, the trial court must consider the totality of the circumstances, including "the recovery sought, the skill demanded, the results obtained, and the attorney-client relationship itself," as well as the factors enumerated in DR 2-106(B). Reid, 68 Ohio St.3d at 576
(emphasis added).
 {¶ 21} "[T]he burden is upon the attorneys to introduce into the record sufficient evidence of the services performed and of the reasonable value of such services * * *." In re Estate ofVerbeck (1962), 173 Ohio St. 557, 559. An attorney also bears the burden of proving that the billed time was fair, proper and reasonable. See Jacobs v. Holston (1980), 70 Ohio App.2d 55,60.
 {¶ 22} In this case, Goldberg proffered testimony that a reasonable hourly fee was between $225 per hour and $250 per hour. Goldberg also proffered testimony regarding the complexity of the wrongful death suit. However, although Goldberg estimated his billable hours as between 1,400 and 1,500, he failed to offer an itemized bill or any other evidence to substantiate his estimate. Moreover, Goldberg failed to proffer any evidence that his estimated billable hours were fair or reasonable. Since "the trial court * * * must base the fee determination upon evidence adduced and cannot substitute its own knowledge for evidence,"In re Estate of Wood (1977), 55 Ohio App.2d 67, 75, and since Goldberg failed to offer any evidence regarding the reasonableness of his estimated billable hours, such as expert testimony, see, e.g., id.; In re Estate of Mintzer (July 17, 1995), 8th Dist. No. 68632, 1995 Ohio App. LEXIS 3022; In reEstate of Cain (Nov. 9, 1993), 10th Dist. No. 93-AP-111, 1993 Ohio App. LEXIS 5396; In re Estate of Weller (Jan. 16, 1987), 11th Dist. No. 11-158, 1987 Ohio App. LEXIS 5549, we do not find that Goldberg met his burden of establishing the reasonableness of the estimated billable hours. See In re Estate of Lazar,
11th Dist. No. 2003-G-2509, 2004-Ohio-1964, at ¶¶ 32-33 (where we held that, although the attorney submitted an itemized bill, the attorney still failed to bear his burden of establishing the reasonableness of the number of hours billed because he failed to "offer any evidence, other than his own conclusory statements, that the number of hours billed was fair, proper and reasonable").
 {¶ 23} Even if Goldberg established the reasonableness of his estimated billable hours, his fraudulent conduct in this case required a fee forfeiture. "A lawyer engaging in clear and serious violation of duty to a client may be required to forfeit some or all of the lawyer's compensation for the matter." Restatement of Law Governing Lawyers 3d, Section 37. "Even if a fee is otherwise reasonable," a fee may still be subject to forfeiture. Restatement of Law Governing Lawyers 3d, Section 37, Comment a. Obviously, the continued concealment of client funds is a clear and serious violation of an attorney's duty to a client. See Restatement of Law Governing Lawyers 3d, Section 37, Comment d ("A violation is clear if a reasonable lawyer, knowing the relevant facts and law reasonably accessible to the lawyer, would have known that the conduct was wrongful.").
 {¶ 24} In this case, it is evident that Goldberg's fraudulent conduct resulted in a clear and serious violation of his duties. Goldberg concealed over $700,000.00 from Fraelich for a period in excess of two years, even going so far as to send a letter to Fraelich warning of the diminished probability of receiving full judgment ten months after receiving a substantial portion of the judgment. And, until the concealment action was filed, Goldberg never notified Fraelich he received the funds, nor did he forward any of the funds to Fraelich. Further, Fraelich's signatures on the checks were forged. Moreover, Goldberg's conduct was not limited to this one incident. The record reveals that Goldberg defrauded 22 other clients, for a total amount in excess of $4 million. The extent and duration of the numerous acts of fraud clearly evince Goldberg's conduct was performed knowingly and consciously.
 {¶ 25} "[T]he authority to practice law * * * is [a] true privilege." Baird v. State Bar of Arizona (1971), 401 U.S. 1,20 (Blackmun, J., dissenting). Any abuse of that privilege cannot be condoned. "The judiciary * * * has a significant interest in assuring and maintaining high standards of conduct of attorneys engaged in practice." Middlesex Cty. Ethics Committee v. GardenState Bar Assn. (1982), 457 U.S. 423, 434 (citation omitted). With these principles in mind, and considering the deterrent purpose of fee forfeiture, see Restatement of Law Governing Lawyers 3d, Section 37, Comment b, and the gravity of Goldberg's breach of duty, as discussed above, we find that, as a matter of law, Goldberg's fee was subject to total forfeiture.[1] See Restatement of Law Governing Lawyers 3d, Section 37, Comment d (fee forfeiture is appropriate for repeated and continuous conduct involving a knowing or conscious disloyalty to the client); In re E. Sugar Antitrust Litigation
(C.A. 3, 1982) 697 F.2d 524, 533 (forfeiture of fees for services rendered prior to the violation of duty is appropriate for egregious violations of an attorney's duties).
 {¶ 26} Even if Goldberg's fees were not subject to total forfeiture, Goldberg was not entitled to a payment of attorney fees. Since Goldberg permanently concealed and retained more than the amount of attorney fees the trial court determined were reasonable, Goldberg's fees had been paid in full. Thus, ordering Fraelich to pay the federal restitution fund that Goldberg is required to provide would work a great inequity on Fraelich, while unjustly enriching Goldberg. In essence, Goldberg would receive credit for the amount Fraelich was ordered to pay, an amount that Goldberg had already retained from Fraelich by concealing the funds.
 {¶ 27} In regards to the $78,966.55 in expenses the trial court ordered Fraelich to pay, we find that, since Goldberg retained well in excess of this amount, the expenses have been paid in full. Thus, such an order would unjustly enrich Goldberg as discussed above.
 {¶ 28} For these reasons, we find that the trial court abused its discretion in ordering Fraelich to pay attorney fees and expenses to the federal restitution fund. Fraelich's first three assignments of error have merit.
 {¶ 29} In his fourth assignment of error, Fraelich argues that the trial court erred in issuing its protective order. Fraelich argues that such order improperly precluded his efforts to conduct discovery in aid of execution of judgment.
 {¶ 30} Civ.R. 26(C) vests a trial court with discretion in deciding whether to grant a motion for protective order over a discovery issue. Ruwe v. Bd. of Twp. Trustees of SpringfieldTwp. (1987), 29 Ohio St.3d 59, 61 (citation omitted). An appellate court will not overturn a trial court's ruling absent an abuse of that discretion. Montrose Ford, Inc. v. Starn,147 Ohio App.3d 256, 259. 2002-Ohio-87 (citation omitted).
 {¶ 31} Civ.R. 69 provides that, "[i]In aid of the judgment or execution, the judgment creditor * * * may * * * obtain discovery from any person, including the judgment debtor, in the mannerprovided in these rules." (Emphasis added.) Although a party may request to enter upon land or property of another, Civ.R.34(A), the entry cannot take place until at least 28 days after service of the request so that the opposing party may have an opportunity to grant the request or to object. Civ.R. 34(B).
 {¶ 32} In this case, Fraelich filed the notice of entry upon land on September 23, 1999. The motion designated October 4, 1999, as the date on which entry was to take place. On October 1, 1999, Goldberg filed the motion for protective order. The basis of this motion was the failure to provide Goldberg with 28 days notice as required by Civ.R. 34(B). That same day, the trial court granted the protective order. The order was limited in that it only precluded the October 4, 1999 entry. It did not forbid any future entries upon Goldberg's property. Since the date of entry was to occur only 11 days after notice of entry was filed, rather than the requisite 28 days, and since the trial court limited the protective order, we find that the trial court did not abuse its discretion in granting Goldberg's protective order. This ruling does not preclude Fraelich from seeking entry upon Goldberg's property in the future if the proper notice pursuant to Civ.R. 34(B) is given.
 {¶ 33} Fraelich's fourth assignment of error is without merit.
 {¶ 34} For the foregoing reasons, we hold that Fraelich's first three assignments of error have merit and that his fourth assignment of error is without merit. The decision of the Trumbull County Court of Common Pleas, Probate Division, regarding attorney fees and expenses is reversed and the case is remanded to the trial court to enter judgment consistent with this opinion. The decision regarding the protective order is affirmed.
O'Neill, J., concurs.
Christley, J., concurs in part, dissents in part with Dissenting Opinion.
[1] We must emphasize that total fee forfeiture is an extreme measure to be utilized only in cases, such as this one, of egregious violations of an attorney's duties, which violation is done knowingly or consciously.