OPINION
{¶ 1} Appellant, David A. Younkman ("Younkman"), appeals the March 5, 2004 judgment entry of the Trumbull County Court of Common Pleas, Probate Division, regarding the payment of attorney and fiduciary fees for the administration of the Estate of James G. Murray ("Murray"). For the following reasons, we affirm, in part, and reverse, in part, the decision of the probate court.
 {¶ 2} Murray died on November 2, 1997. According to the provisions of his last will and testament, Younkman was appointed Executor of Murray's estate, which was to be divided between Barbara A. Vogel and Theresa Murray nka Bagley. Younkman retained Attorney Philip A. Brandt ("Brandt") to represent the Estate.
 {¶ 3} Since August 1995, Younkman and Murray were the sole members of M.Y. Development, Ltd. ("M.Y. Development"), an Ohio limited liability corporation. According to M.Y. Development's operating agreement, Younkman owned a 62.5 percent interest in the corporation and Murray owned 37.5 percent interest. Upon Murray's death, Younkman was the sole surviving member of the corporation. On April 16, 1999, Younkman applied to the probate court to redeem Murray's ownership interest in the in corporation for $88,006.78, pursuant to M.Y. Development's operating agreement. In response, the probate court found "that it is in the estate's best interest to have an independent party represent the estate in this matter." Thereupon, on April 29, 1999, the court appointed Joyce A. May ("May") to represent Murray's estate.
 {¶ 4} The administration of Murray's estate generated much collateral litigation. On January 29, 1999, Bagley filed suit against the estate, alleging that Younkman breached his fiduciary duties as executor of the estate. Proceedings in this case were stayed on September 7, 2000, and this case was voluntarily dismissed on September 28, 2002.
 {¶ 5} On February 15, 1999, Younkman retained the services of David R. Watkins ("Watkins") and the firm of Thompson, Dunlap, Heydinger, MacDonald, Watkins and Traul, Ltd. ("Thompson, Dunlap"), in which Watkins is a senior partner, as special counsel.
 {¶ 6} On March 3, 1999, Vogel filed suit against the estate, seeking a declaratory judgment and monetary damages. Proceedings in this case were stayed on February 21, 2001, and this case was voluntarily dismissed on October 24, 2002.
 {¶ 7} On November 16, 2000, the probate court determined the redemption value of Murray's interest in M.Y. Development to be $132,566.25. On appeal, this court reversed the November 16, 2000 decision and remanded the case to the probate court to recalculate the redemption value of Murray's interest. In re Murray, 11th Dist. No. 2000-T-0152, 2002-Ohio-1686, at ¶ 17.
 {¶ 8} On April 25, 2002, Younkman appealed an IRS Federal Estate Tax Audit Assessment in tax court. On July 24, 2002, Younkman filed suit against Bagley for the recovery of estate tax apportionment pursuant to R.C. 2113.88. Resolution of these cases was stayed pending final determination of Younkman's application to redeem Murray's interest in M.Y. Development.
 {¶ 9} On January 22, 2003, Younkman and Bagley reached a "universal settlement of all claims" resolving "all issues between David Younkman, as executor and individually, and Teresa Bagley." According to the terms of this agreement, Murray's interest in M.Y. Development was valued at $82,855.02; Bagley would pay $52,750 in settlement of the litigation with Younkman; and Bagley would not object to executor fees sought by Younkman and to attorney fees sought by Brandt and by Thompson, Dunlap.
 {¶ 10} Thereafter, May moved the probate court to discharge her as estate representative, which motion was granted on August 13, 2003.
 {¶ 11} During the course of the administration of Murray's estate, the following fee applications were made by Younkman, Brandt, and Thompson, Dunlap. On November 23, 1999, Younkman moved the probate court for executor fees in the amount of $19,969 and for attorney fees for Brandt in the amount of $31,265.47.[1] By judgment entry dated April 5, 2000, the probate court authorized Younkman to pay Brandt $10,000 as partial payment for attorney fees.
 {¶ 12} On October 17, 2000, a second motion requesting attorney fees was filed, seeking additional fees by Brandt in the amount of $10,284.75. When combined with the fees requested on November 23, 1999, and adjusted for partial payment, Brandt was seeking attorney fees in a total amount of $31,550.20.
 {¶ 13} On June 27, 2003, Brandt filed another motion for attorney fees in the amount of $60,707.50, and costs in the amount of $851.61, representing all legal services provided on behalf of Murray's estate.[2]
This represented an additional $29,157.30 in legal fees since the time of Brandt's previous application for fees.
 {¶ 14} Also on June 27, 2003, Watkins and Thompson, Dunlap filed an application to approve attorney fees in the amount of $38,323.80 and expenses in the amount of $349.85 for "litigation arising in conjunction with the administration of the Estate of James Murray."
 {¶ 15} The motions for fees were heard before a magistrate of the probate court who issued her report and overruled objections thereto. On March 5, 2004, the probate court adopted the magistrate's report. The court found that Attorney Brandt is entitled to $45,411.11 for "reasonable value of services rendered by Attorney Brandt to the estate" and $194.28 for expenses; that Younkman is entitled to $19,969 for "the reasonable value of services rendered * * * as executor"; that Thompson, Dunlap was not entitled to reimbursement from estate assets because their services "benefited the executor in his individual capacity." The court ordered that $17,060.80, paid to Thompson, Dunlap out of estate assets without prior court approval, be repaid to the estate within thirty days. The court also denied a request that $5,151.76, representing the difference between $88,006.78 received by the estate for Murray's interest in M.Y. Development and the final valuation of Murray's interest at $82,855.02, be paid from the estate to M.Y. Development.
 {¶ 16} Younkman timely appeals and raises the following assignments of error:
 {¶ 17} "[1.] The Trial Court abused its discretion in determining the reasonable value of services rendered to the Estate by Attorney Brandt.
 {¶ 18} "[2.] The Trial Court abused its discretion by denying repayment of $5,151.76 for the Estate's minority interest in MY Development, Ltd. because the record demonstrates that there was an overpayment from MY Development Ltd. to the Estate, and Younkman requested repayment to MY Development Ltd., not to himself in his capacity as Executor.
 {¶ 19} "[3.] The Trial Court abused its discretion by denying in toto
payment of the reasonable value of services rendered to the Estate of James G. Murray by the firm of Thompson, Dunlap, Heydinger, MacDonald, Watkins Taul, Ltd. in accordance with Ohio Revised Code § 2113.36 and Code of Professional Responsibility DR 2-106(B)."
 {¶ 20} "When an attorney has been employed in the administration of the estate, reasonable attorney fees paid by the executor or administrator shall be allowed as part of the expenses of administration." R.C. 2113.36. "Attorney fees in all matters shall be governed by DR 2-106 of the Code of Professional Responsibility," which concerns the reasonableness of attorney fees. Sup.R. 71(A). The Local Rules for the Probate Court of Trumbull County provide that "[t]he allowance of counsel fees as part of the expense for administering a decedent's estate * * * shall be based upon the actual services performed by the attorney, and the reasonable value of the services." Local Rule 71.1.
 {¶ 21} "The allowance of fees for services rendered by attorneys employed by an executor or administrator in the settlement of the estate * * * is a matter to be determined by the probate court." Trumpler v.Royer (1917), 95 Ohio St. 194, paragraph two of the syllabus. "[T]he burden," however, "is upon the attorneys to introduce into the record sufficient evidence of the services performed and the reasonable value of such services." In re Verbeck's Estate (1962), 173 Ohio St. 557, 559. The determination of reasonable attorney fees is within the discretion of the probate court and, absent an abuse of that discretion, will not be reversed on appeal. In re Estate of Fraelich, 11th Dist. No. 2000-T-0016, 2004-Ohio-4538, at ¶ 17 (citations omitted); In re Estateof Williams, 11th Dist. No. 2003-L-200, 2004-Ohio-3993, at ¶ 8 (citations omitted); In re Estate of Lazar, 11th Dist. No. 2003-G-2509, 2004-Ohio-1964, at ¶ 15 (citations omitted).
 {¶ 22} In his first assignment of error, Younkman contends that the trial court abused its discretion by awarding Brandt attorney fees in the amount of $45,411.11 and expenses in the amount of $194.28. Brandt's final motion to approve the payment of attorney fees and expenses calculated the reasonable costs of the services he rendered the estate from November 1997 through May 2003 at $60,707.50 and expenses at $851.61.
 {¶ 23} In respect to Brandt's expenses, the probate court denied Brandt's request for $657.33 in "fees for outside legal counsel to Chernesky, Heyman Kress, PLL." Brandt did not explain why it was necessary to travel to Dayton, Ohio to consult with Chernesky, Heymann and Kress "regarding estate issues." Therefore, the probate court did not abuse its discretion by denying Brandt expenses incurred for the services of outside counsel. In re Estate of Secoy (1984), 19 Ohio App.3d 269,272 ("the right of an executor or administrator to employ counsel to assist him in the common course of his duties and the compensation of such counsel * * * would not justify the employment of counsel to perform the services or duties of imposed upon the fiduciary and counsel") (citation omitted).
 {¶ 24} In respect to Brandt's attorney fees, the trial court found that, "pursuant to DR2-106 and Local Rule 71 * * * the reasonable value of services rendered by Attorney Brandt to the estate is $45,411.11," thereby reducing the amount requested by $15,296.39. A probate court is not bound to accept an attorney's itemization of services performed on behalf of an estate and its fiduciary. "Although the time and labor of an attorney is a relevant factor in determining reasonableness of the attorney's fees, it is but one of the factors the trial court must consider." Williams, 2004-Ohio-3993, at ¶ 22 (citations omitted); In reEstate of Love (1965), 1 Ohio App.2d 571, paragraph two of the syllabus ("Fees which are reasonable must be reasonable both from the standpoint of the attorney rendering the services and from the standpoint of the estate out of which payment is being made.").
 {¶ 25} In the present case, Brandt introduced evidence of the services he performed and of the reasonable value of those services in the amount of $60,707.50. Although the probate court is entitled to reduce that amount, it is impossible to discern on what grounds the probate court did so. The court's judgment entry states: "Pursuant to DR2-106 and Local Rule 71, et seq., the Court finds the reasonable value of services rendered by Attorney Brandt to the estate is $45,411.11." Without a more definite indication of the probate court's reason for reducing the attorney fees, this court, as it has done on prior occasions, must reverse and remand for further proceedings. In re Duffy, 11th Dist. No. 2001-G-2385, 148 Ohio App.3d 574, 2002-Ohio-3844, at ¶¶ 17-18 (probate court erred by "summarily" denying attorney fees in the absence of evidence that the fees were unreasonable); In re Estate of Clark (Dec. 19, 1997), 11th Dist. No. 97-G-2060, 1997 Ohio App. LEXIS 5702, at *8 (reversing an award of attorney fees where "the probate court did not sufficiently explain its reasoning"); In re Estate of Lindquist (Dec. 22, 1995), 11th Dist. No. 95-P-0041, 1995 Ohio App. LEXIS 5713, at *9 ("the court erred in summarily denying appellant's final request for attorney fees without ascertaining and factoring into the equation the reasonable value of the compensable services actually performed by appellant").
 {¶ 26} The probate court is not bound to follow any precise formula in determining the reasonableness of fees. However, for this court to be able to conduct any meaningful review of the trial court's exercise of its discretion, we must be able to discern some basis for its decision. In the present case, it is uncertain whether the probate court found the number of hours unreasonable, whether the rate charged was unreasonable, whether Brandt's services in excess of $45,411.11 benefited Younkman rather than the estate, or whether the court was motivated by some other consideration. Without understanding the basis for the probate's court reduction of Brandt's fees, our affirmance would be nothing more than a "rubber stamp" of that decision.
 {¶ 27} The first assignment of error has merit as to the trial court's determination of Brandt's attorney fees.
 {¶ 28} In his second assignment of error, Younkman argues that the trial court abused its discretion by denying his request that $5,151.76 be paid to M.Y. Development out of estate assets as "overpayment" for Murray's interest in the corporation. A partial account for Murray's estate, filed in December 1999, indicates that M.Y. Development paid the estate $88,006.78 for Murray's ownership interest in the corporation. According to the "universal settlement of all claims" agreement, filed January 22, 2003, the valuation of Murray's interest in M.Y. Development is $82,855.02. The $5,151.76 requested by Younkman at the November 24, 2003 hearing before a magistrate of the probate court represents the difference between the amount paid by M.Y. Development and the final evaluation of Murray's interest.
 {¶ 29} In denying Younkman's request for return of the "overpayment," the probate court referenced the "universal settlement" which constitutes "a full and final settlement" of all claims by the parties. The probate court also noted that the settlement "eliminated a hearing on whether Mr. Younkman's delay in distribution of the estate's interest in the corporation resulted in benefit to himself or the corporation." The probate court's concern recognizes the fact that Younkman's interest in the return of the "overpayment" is the same as M.Y. Development's interest, as Younkman became the sole member of that corporation after Murray's death.
 {¶ 30} In light of the January 22, 2003 agreement's settlement of all claims by the parties, the probate court's decision to deny the return of the "overpayment" was a proper exercise of its discretion. The January 22, 2003 agreement fixed the value of Murray's interest in M.Y. Development and provided that Bagley would pay the estate $53,750 "in full settlement of the litigation." The January 22, 2003 agreement does not explain how the $53,750 figure was determined. Therefore, we will construe this figure to include the alleged "overpayment" as part of the "full settlement" of the litigation.
 {¶ 31} The agreement also provided that Bagley would not object to Younkman's, Brandt's, and Watkins' claims for fees. Strictly speaking, Younkman's request for the repayment of the $5,151.76 does not constitute fees, but a claim against the estate. Therefore, it was inappropriate for Younkman to advance this claim as part of his application for executor fees after the "universal settlement of all claims."
 {¶ 32} Younkman's second assignment of error is without merit.
 {¶ 33} In the third assignment of error, Younkman challenges the probate court's denial of attorney fees to Thompson, Dunlap. Attorney Watkins sought fees on behalf of himself and Thompson, Dunlap in the amount of $38,323.80 and expenses in the amount of $349.85. The fees and expenses requested were for services provided by Watkins and Thompson, Dunlap relative to the following actions: Bagley's suit against Younkman, the proceeding in probate court regarding the valuation of Murray's interest in M.Y. Development, the appeal of the probate court's decision, and Younkman's suit against Bagley. The probate court found that $17,060.80 in attorney fees had already been paid to Thompson, Dunlap from estate assets without the approval of the court and noted that Thompson, Dunlap's services "benefited the executor in his individual capacity."
 {¶ 34} In considering requests for attorney fees under R.C. 2113.36, courts have recognized the equitable principle that the services rendered must be for the benefit of the estate, and not of the executor in his individual capacity. In re Estate of Lavoy (Nov. 27, 1992), 6th Dist. No. L-92-130, 1992 Ohio App. LEXIS 5980, at *4 ("[t]he circumstances controlling his right to attorney fees depends upon whether the executor will personally benefit from the result of the contest") (citations omitted); In re Estate of Thompson (June 15, 2000), 8th Dist. Nos. 77350 and 77351, 2000 Ohio App. LEXIS 2647, at *7 ("[t]he general equitable rule * * * is that the services must be beneficial to the estate") (citation omitted); cf. Kirkbride v. Hickok (1951), 155 Ohio St. 165,169-170 ("in few * * * of the numerous cases we have examined involving the construction of wills have allowances of expenses and attorney fees out of estates been approved * * * where those parties participated in the litigation, not in any way for the general benefit of the estates but solely in attempts to gain portions of the estates for themselves") (citations omitted).
 {¶ 35} In the present case, the primary issue in the litigation of the estate concerned the valuation of Murray's interest in M.Y. Development. Younkman's interest in this valuation was directly contrary to the estate's interest. As indicated under the second assignment of error, the lower the valuation of Murray's interest in M.Y. Development, the less M.Y. Development would have to pay the estate to redeem Murray's interest. Since Younkman was the sole owner of M.Y. Development after Murray's death, it was to his benefit to advocate for the lowest possible valuation of Murray's interest. When this court overturned the probate court's valuation of the estate's interest in M.Y. Development at $132,566.25 on Younkman's appeal, the benefit accrued to M.Y. Development and Younkman. Murray, 2002-Ohio-1686, at ¶ 17 (remanding the case and acknowledging that the issue of whether Younkman caused any delay in the distribution of the estate's interest in M.Y. Development which resulted in a benefit to him or the company is an issue that remains to be determined).
 {¶ 36} Recognizing this conflict, the trial court appointed Attorney May as independent counsel to represent the estate in these matters. From this point forward, the services of Thompson, Dunlap were essentially for Younkman's benefit in his individual capacity. Cf. Thomas v. Moore
(1894), 52 Ohio St. 200, at paragraph two of the syllabus ("[e]xecutors and administrators are personally liable for the services of attorney employed by them"). From the estate's point of view, compensating Thompson, Dunlap for these services would not be reasonable.[3] Love,1 Ohio App.2d 571, paragraph two of the syllabus.
 {¶ 37} Accordingly, the probate court did not act in an unreasonable, arbitrary, or unconscionable manner by denying Thompson, Dunlap's request for attorney fees and expenses on the grounds that these services benefited Younkman in his individual capacity. Younkman's third assignment of error is without merit.
 {¶ 38} For the foregoing reasons, the decision of the Trumbull County Court of Common Pleas, Probate Division is affirmed, in part, and reversed, in part. This matter is remanded to the probate court for further proceedings, consistent with this opinion, regarding Attorney Brandt's attorney fees.
O'Toole, J., concurs, O'Neill, J., dissents with a Dissenting Opinion.
[1] Computation of these fees was based on an itemization of services rendered by Brandt. On the same day, Brandt also moved the court for attorney fees in the amount of $22,564, based on the formula for calculating attorney fees in Local Rule 71 (formerly Local Rule 40.2(A)). Since Brandt was claiming "extraordinary" legal fees, the probate court ordered that all attorney fees should be submitted to the court in itemized format.
[2] We note that the figure of $60,707.50 does not correspond to Brandt's itemization of services. According to the figures submitted to the trial court, Attorney Brandt worked 441.35 hours at a rate of $125 per hour for an amount of $55,168.75; Brandt's partner, Attorney Christopher J. Moell, worked 17.65 hours at a rate of $95 per hour and 11.6 hours at a rate of $105 per hour for an amount of $2894.75; and Paralegal Russlyn Phelps worked 66.1 hours at a rate of $40 per hour. The total amount for these services is $59,197.50.
[3] Younkman is correct that attorney fees may not be denied on the basis that the fees were not preapproved by the probate court. See In reEstate of Duffy, 148 Ohio App.3d 574, 2002-Ohio-3844, at ¶ 19. By not obtaining the probate court's approval prior to paying a portion of Thompson, Dunlap's fees out of estate assets pursuant to Local Rule 71.3(A), however, Younkman assumed the risk that the probate court would not allow those fees.