■ ADOLPH KOEPPEL et al., Respondents, v MICHAEL T. SCHRODER et al., Appellants.—In an action to permanently enjoin the defendants from contacting and/or communicating with those persons who, up to and including January 21, 1986, had active legal matters pending with and were represented by the law firm of Koeppel, Sommer & Del Casino, P. C., or its predecessor firms, the defendants appeal, as limited by their brief, from so much of an order of the Supreme Court, Nassau County (Murphy, J.), dated June 20, 1986, as granted the plaintiffs' motion for a preliminary injunction restraining the defendants from contacting and/or communicating with those clients of the plaintiff law firm Koeppel, Sommer & Del Casino, P. C., who had active legal matters pending with and who were represented by said law firm or its predecessors as of January 21, 1986, upon the condition that the plaintiffs furnish an undertaking in the amount of $5,000.

Order reversed insofar as appealed from, on the law, with costs, and the plaintiffs' motion denied.

Prior to December 4, 1984, the plaintiffs Adolph Koeppel and Anne J. Del Casino, and the defendants Tracie P. Peddy, Saul R. Fenchel and William D. Siegel, were partners in the Nassau County law firm of Koeppel Sommer Siegel Fenchel Peddy & Del Casino, P. C. (hereinafter KSSFPD-P.C.) which specialized in tax certiorari, condemnation and zoning law. On September 18, 1984, Koeppel, Del Casino, Peddy, Fenchel, and Siegel executed an agreement, arrived at after negotiations which had produced six prior drafts, governing, *inter alia,* the termination of a partner's association with the firm. In relevant part, the agreement contained provisions permitting a disassociating partner to remove from the firm the files of those clients which he or she had originated, following his or her substitution for the firm upon the client's consent.

On December 4, 1984, Siegel, Fenchel and Peddy disassociated themselves from KSSFPD-P.C., began operating as the law firm of Siegel Fenchel & Peddy, P.C. (hereinafter SFP-P.C.), and sent out some 500 form letters to clients with whom they either had personal or professional contacts. The letters informed the clients of the departure of the three partners from KSSFPD-P.C. and the formation of the new firm of SFP-P.C. Enclosed with each letter was a "consent to change attorney" form with a business reply envelope. During the

ensuing months, Koeppel executed numerous "consent to change attorney" forms and transferred many case files to SPF-P.C.

On March 1, 1985, the parties met to resolve disputes that had arisen between them stemming from the defendants' withdrawal from the firm. They arrived at a written agreement entitled "Resolution of Outstanding Issues" dated March 11, 1985, which, *inter alia,* confirmed their September 18, 1984 agreement and obligated the surviving law firm of Koeppel Sommer & Del Casino, P.C. (hereinafter KSD-P.C.), to immediately execute all currently delivered substitutions and deliver the corresponding client files to SFP-P.C. The parties were unable, however, to reach agreement on a list of KSSFPD-P.C. clients "not to be disturbed". Shortly thereafter, when the defendants complained to the plaintiffs about communications which the plaintiffs had recently sent to the defendants' "new" clients, the plaintiffs responded by letter dated March 28, 1985 which stated that the communications to the SFP-P.C. clients were inadvertent and that: "[T]here will be *some* communications coming to some of our ex-clients shortly. You will recollect that it was your refusal to agree on a list of clients 'not to be disturbed' at our March 11, 1985 meeting, which has left us both free to continue the solicitation 'dance' ". In all SFP-P.C. was substituted for KSSFPD-P.C. in over 700 legal proceedings with the plaintiffs' consent. In June 1985 SFP-P.C. again mailed form letters to its clients from the former firm of KSSFPD-P.C., which contained the same message as the letter mailed out in December 1984.

During December 1985 SFP-P.C. mailed out a form letter to potential tax certiorari clients regarding garbage-collection district taxes. The letter informed the recipient of SFP-P.C.'s conclusion that such taxes were an improper charge for certain properties and invited the recipient to participate in an action to declare the impropriety of the tax. At least one of these form letters was mailed to a KSD-P.C. client.

On January 21, 1986, the plaintiffs commenced the within action seeking to permanently enjoin the defendants from continuing to willfully and knowingly solicit and interfere with the plaintiffs' clients in violation of the Judiciary Law, the Code of Professional Responsibility, retainer agreements, and the parties' agreement dated September 18, 1984. Their complaint alleged that the defendants had engaged in a conspiracy, which began prior to December 1984 to tortiously interfere with the plaintiffs' client relationships and contracts of retainer.

The plaintiffs subsequently were granted a preliminary injunction, enjoining during the pendency of the action that which the plaintiffs sought to permanently enjoin. The granting of the preliminary injunction is the subject of this appeal.

We find that the court erred in granting the plaintiffs the temporary injunctive relief sought. To be entitled to temporary injunctive relief, a movant must establish a clear right thereto by demonstrating (1) the likelihood of success on the merits; (2) irreparable injury absent granting the preliminary injunction; and (3) a balancing of equities in its favor *(see, Grant Co. v Srogi,* 52 NY2d 496, 517). Additionally, a plaintiff should be denied an injunction where it lacks equitable standing to obtain affirmative equitable relief *(Grant Co. v Srogi, supra,* at p 518).

At the outset, the plaintiffs have not demonstrated a likelihood of success on the merits. It is established in New York that a client has an absolute right on public policy grounds to terminate the attorney-client relationship at any time without cause *(see, Demov, Morris, Levine & Shein v Glantz,* 53 NY2d 553). Thus, an attorney's retainer agreement is a contract which is terminable at will and, as such, "a competitor of one of the parties is free to use proper and legal means to induce termination" *(Guard-Life Corp. v Parker Hardware Mfg. Corp.,* 50 NY2d 183, 198 [Cooke, Ch. J., dissenting in part]; Restatement [Second] of Torts § 768). A competitor who lawfully induces termination of a contract terminable at will commits no ethical violation and does not produce a result contrary to the expectations of the parties *(see, Guard-Life Corp. v Parker Hardware Mfg. Corp., supra,* at p 200 [Cooke, Ch. J., dissenting in part]). In order to sustain a cause of action based on tortious interference with a contract terminable at will there must be a showing of wrongful interference such as fraudulent representations or threats *(see, Guard-Life Corp. v Parker Hardware Mfg. Corp., supra,* at p 194). The record before us on this appeal is barren of any such proof. Moreover, it appears that the direct mail solicitation of real estate clients by the defendants in December 1985 constituted constitutionally protected commercial speech *(see, Matter of von Wiegen,* 63 NY2d 163, 174-175; *Matter of Koffler,* 51 NY2d 140) governed by 22 NYCRR 691.22, which was not prohibited by any agreement, and which solicitation the plaintiff cannot, therefore, enjoin.

As to the plaintiffs' claim that the defendants unlawfully solicited their clients, allegedly beginning their conspiracy prior to December 1984, the facts indicate that the defendants had signed an agreement dated September 18, 1984, which

covered the removal of certain client files by a partner upon his disassociation from the firm. Pursuant to that agreement, the plaintiffs signed numerous substitution forms. Thereafter, the plaintiffs reaffirmed the agreement in a second agreement dated March 11, 1985. When the defendants subsequently did a second mailing of form letters to clients in June 1985 the plaintiffs made no protest.

The record, therefore, indicates that the plaintiffs participated in and had full knowledge of the material facts surrounding the September 18, 1984 agreement was well as its reaffirmation on March 11, 1985. Moreover, by their letter dated March 28, 1985, the plaintiffs expressly stated that their agreements left themselves and the defendants "free to continue the solicitation 'dance' ". The execution of substitution forms by the plaintiffs during the period between December 1984 and December 1985 together with their letter dated March 28, 1985, amount to a recognition of the agreements as existing. Therefore the plaintiffs are equitably estopped from impeaching their validity (see, Rothschild v Title Guar. & Trust Co., 204 NY 458, 461, 464; Sassower v Barone, 85 AD2d 81, 88). In view of their lack of equitable standing, the plaintiffs should have been denied the preliminary injunction they sought (see, Grant Co. v Srogi, supra).

Finally, we note that the case relied upon by the Supreme Court, Nassau County, Adler, Barish, Daniels, Levin & Creskoff v Espstein (482 Pa 416, 393 A2d 1175, cert denied 442 US 907), is distinguishable from the case at bar. In Adler the attorneys who solicited the firm's clients after they terminated their employment had been salaried associates of the firm and had no agreement with the partners entitling them to seek the clients' consent to substitute them for the firm. Mangano, J. P., Thompson, Brown and Spatt, JJ., concur.