[Cite as *Eichenberger v. Chilton-Clark*, 2019-Ohio-3343.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Raymond L. Eichenberger, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 17AP-809 |
| v. | : | (C.P.C. No. 14CV-3847) |
| Cynthia Chilton-Clark, et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on August 20, 2019

**On brief:** *Raymond L. Eichenberger*, *pro se.* **Argued:** *Raymond L. Eichenberger.*

**On brief:** *Cynthia Chilton-Clark*, *pro se.* **Argued:** *Cynthia Chilton-Clark.*

**On brief:** *David A. Tawney*, *pro se.*

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Plaintiff-appellant, Raymond L. Eichenberger, appeals two decisions entered by the Franklin County Court of Common Pleas on July 5, 2016 and October 20, 2017, respectively denying Eichenberger's motion for summary judgment and granting defendants-appellees' motions for summary judgment. With respect to his claim regarding the underlying foreclosure litigation in which he represented defendant-appellee Cynthia Chilton-Clark, we agree that because his client disputed the amount billed, because Eichenberger was later adjudged to have behaved unethically toward his client, and because he only alleged that his client had not paid the full total as billed, he was required to, but did not, present proper expert evidence to substantiate the reasonableness of his full fee. We also agree that Eichenberger was not entitled to recover fees on a contingent fee case in

which the contingency (the client's recovery) never occurred. We likewise agree that successor counsel was legally permitted to compete with Eichenberger and was not as a matter of law interfering in the contract between Eichenberger and his client. For these reasons, we agree with the trial court that Eichenberger was not entitled to summary judgment and conversely that the appellees were.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On April 8, 2014, Eichenberger filed suit against appellees, Cynthia Chilton-Clark[1] and David A. Tawney. (Apr. 8, 2014 Compl.) The complaint alleged (and Chilton admitted) that Chilton had contracted with Eichenberger (who was then an attorney) to defend her in a foreclosure action and to prosecute a civil case against her former accountant. (Compl. at ¶ 2-3; May 12, 2016 Chilton Answer at ¶ 2-3.) The complaint went on to allege that Chilton had breached the foreclosure defense fee agreement by failing to permit Eichenberger to appeal on her behalf and then failed to pay the balance of her bill, $3,820. (Compl. at ¶ 6-12.) It alleged that Chilton had breached the fee agreement in another case against her former accountant by discharging Eichenberger as her counsel before the case had concluded and by refusing to pay to Eichenberger contingent fees or an hourly rate for the hours he expended on the litigation. *Id.* at ¶ 13-21. The complaint also sought damages against Tawney (the attorney who succeeded Eichenberger as Chilton's counsel) for interference with the contract between Eichenberger and Chilton because he agreed to be Chilton's lawyer without the consent of Eichenberger and without first ensuring that Chilton paid what Eichenberger demanded. *Id.* at ¶ 24-25.

{¶ 3} A copy of the hand-signed contingent fee agreement in the case against Chilton's former accountant was eventually made part of the summary judgment record. (Contingent Fee Agreement, attached to Apr. 26, 2016 Eichenberger Mot. for Summ. Jgmt.) The contingent fee agreement provided for payment of one third of the gross amount of any eventual settlement to Eichenberger and then also provided:

> Client(s) has/have been told and understand(s) that if the relationship with the attorney is terminated prior to settlement or court judgment that this agreement supersedes any subsequent agreement with any other attorney or any insurance company and that the contingent fee shall still be

---

[1] Though the complaint caption refers to her as Chilton-Clark, she apparently prefers to be known as Ms. Chilton. (Sept. 16, 2014 Decision at 1, fn. 1.) Thus we shall hereafter refer to her as Chilton rather than Chilton-Clark.

> owed to the attorney whenever the settlement or judgment is paid to the client(s).
>
> Client(s) also agree(s) that if the legal matter and/or litigation is terminated voluntarily at the decision of the client(s) before the point where monetary recovery by way of settlement or court judgment has been finally denied, or if the client(s) fail(s) to cooperate with the attorney at any time to pursue the case, or if the client abandons the case, that the client(s) will owe the attorney the reasonable value of his services and time spent to date on the case up to the point of termination of work by the attorney and/or abandonment by the client(s).
>
> For purposes of this Agreement, the reasonable value of the attorney's time is hereby agreed to be $ 200.00 per hour for every hour and tenth of an hour attorney expends on the legal matter for the client(s).

*Id.*

{¶ 4} Although what purported to be a retyped conformed copy of the fee agreement in the foreclosure case had been filed in the record, no copy of the original, hand-signed fee agreement for the foreclosure lawsuit was ever introduced into evidence in Eichenberger's lawsuit against his former client. (Foreclosure Fee Agreement, Ex. to Compl.) The foreclosure fee agreement provided that the rate of pay was to be $200 per hour, to be drawn from periodically deposited retainers, and that the balance of fees would be due in the event the attorney-client relationship terminated before the legal matter was concluded. *Id.*

{¶ 5} On April 26, 2016, Eichenberger filed a motion for summary judgment against both Chilton and Tawney. (Apr. 26, 2016 Eichenberger Mot. for Summ. Jgmt.) Chilton and Tawney moved for summary judgment against Eichenberger on May 25 and 26, 2017, respectively. (May 25, 2017 Chilton Mot. for Summ. Jgmt.; May 26, 2017 Tawney Mot. for Summ. Jgmt.) Eichenberger and both defendants, Chilton and Tawney, filed affidavits and other exhibits.

{¶ 6} Eichenberger's affidavit swore that he was retained by Chilton in the foreclosure case at a rate of $200 per billed hour, that he provided legal services in connection with the foreclosure case, and that Chilton refused to pay the final bill amount for services rendered. (June 9, 2017 Eichenberger Aff. ¶ 3-4, 8, attached to June 9, 2017 Eichenberger Memo. in Opp.) Eichenberger averred that when Chilton refused to pay on

the foreclosure case bill, he refused to do further legal work on the contingent fee case against her accountant until she paid to his satisfaction. *Id.* at ¶ 9. Instead of paying as demanded, Chilton dismissed Eichenberger as her attorney in the contingent fee case. *Id.* at ¶ 10. She then refused to pay an hourly billed rate for the work he had already performed on the contingent fee case. *Id.* at ¶ 11-13. Eichenberger admitted that not until November 2012 did Chilton's new attorney pick up Chilton's file from his office, but Eichenberger averred that he had no documents in his possession that were not also in Chilton's possession. *Id.* at ¶ 22-23. Eichenberger asserted that Chilton owed him $3,820 for his work on the foreclosure case and $20,080 on the contingent fee case. *Id.* at ¶ 18. Notwithstanding Eichenberger's claim that he was owed fees on the contingent fee case, he admitted that, with Tawney as counsel, Chilton lost the contingent fee case and that defeat was affirmed by the court of appeals. *Id.* at ¶ 14.

{¶ 7} Chilton, in her affidavit, agreed that she entered into two fee agreements with Eichenberger. (May 25, 2017 Chilton Aff. at ¶ 3.) She admitted also that she received a bill from Eichenberger after he claimed she breached the foreclosure case agreement by refusing to appeal. *Id.* at ¶ 4. However, she averred that she always paid when Eichenberger asked her for a payment on a case, that she paid by cash or check, and that Eichenberger never provided her receipts even though she asked for them. *Id.* at ¶ 5-6. She stated that she had paid more than what Eichenberger had accounted for in his billing and that the bills he sent her had errors. *Id.* at ¶ 12-13. She averred that after Eichenberger started denying that she had paid, demanding more payments, and mishandling the suit against her accountant, she asked that he withdraw and return her files. *Id.* at ¶ 8-10. He refused on both counts and she was forced to file a pro se motion to force him to withdraw. *Id.* at ¶ 10, 14.

{¶ 8} Tawney, in his affidavit, agreed that he represented Chilton in the contingent fee case beginning when he entered an appearance on May 15, 2012. (May 26, 2017 Tawney Aff. at ¶ 9.) Although Tawney explained that he had represented Chilton on other matters before entering an appearance in the contingent fee case, he averred that he only represented Chilton in the contingent fee case after she terminated Eichenberger on April 25, 2012. *Id.* at ¶ 5-6, 8, 10. He stated that when Chilton told him that she wanted to

dismiss Eichenberger as her counsel in the contingent fee case, he advised her as to the steps she would have to take to terminate Eichenberger. *Id.* at ¶ 7.

{¶ 9} The parties also introduced some documentary evidence. Eichenberger introduced sparse itemized time bills for each case. (Bills, attached to June 9, 2017 Eichenberger Memo. in Opp.) Tawney introduced copies of Chilton's pro se motion dismissing Eichenberger, the trial court's order dismissing Eichenberger as counsel of record, and dockets for Chilton's divorce and the contingent fee action. (May 26, 2017 Tawney Exs.) Chilton produced a series of correspondence between her and Eichenberger. (Chilton Exs. 1-5, filed May 17, 2016; Chilton Exs. 2-6, 9-21, attached to May 25, 2017 Chilton Aff.)

{¶ 10} The correspondence between Chilton and Eichenberger generally confirmed a contentious relationship between the parties, provided evidence that Chilton made some payments, showed that Eichenberger nonetheless felt he was owed further payments, and demonstrated that Eichenberger refused to withdraw and to return Chilton's files. On January 19, 2012, for example, Chilton wrote to Eichenberger regarding the status of the cases and inquired, "What hours will you be in on Friday? I most likely will be paying in cash as usual." (Chilton Ex. 4, attached to May 25, 2017 Chilton Aff.) Then on February 28, 2012, Eichenberger wrote:

> Hello Cindy.
>
> You didn't drop a check off for me yesterday as I had asked you to do.
>
> Nor have you told me when you are going to pay the bill.
>
> If you're going to deliver the signature pages of the Affidavits to me today, I need for you to include a check for the full amount of the foreclosure bill.
>
> I don't continue to do legal work for people who owe me money.
>
> Thanks.
>
> Ray Eichenberger

(Chilton Ex. 2, filed May 17, 2016.) In a separate e-mail, Eichenberger elaborated by asserting that Chilton was seeking to delay paying her bills and added, "I don't apologize to

clients for expecting them to pay me PROMPTLY for my services rendered." (Chilton Ex. 5, attached to May 25, 2017 Chilton Aff.) Later that day, Chilton replied in relevant part:

> Sending me a bill for over a year of services and making it sound as though [I] shouldn't drop off the signed affidavits on a different case if I don't have a check is absolutely wrong. I have several issues with the bill at first glance, so it will take me some time to review it...time that I don't have right now with this deadline approaching and you waiting until the last minute to send me this stuff to review. I don't have receipts for all accounting legal expenses that I paid you by check or cash and I can't complete taxes [un]til then.

*Id.*

{¶ 11} Approximately one month later, on March 26, 2012, Chilton sent an e-mail to Eichenberger indicating that he was charging her excessively, had mishandled the case, was unethically refusing to do further work on the contingency fee case, and that, in consequence, she was speaking to other attorneys about how to proceed. (Chilton Ex. 6, attached to May 25, 2017 Chilton Aff.)

{¶ 12} In April, Eichenberger sent Chilton this e-mail:

> Cindy,
>
> If you read the Fee Agreement that you signed with me, you just breached the Agreement, and I'm entitled to be paid in full for my work performed to date.
>
> When I enter into a Contingent Fee Agreement with someone, I am extending them credit- you had and have a duty and obligation to fully cooperate with me in the work since I have extended you credit. You haven't done so in many, many instances.
>
> Therefore, in order to terminate me from the [contingent fee] case, I will prepare a bill and I would expect you to pay me IN FULL before I release any information to you or withdraw from the case. My guess would be that you owe me at least $ 20,000.00 (probably more), in addition to the $ 2,615 you owe me on the foreclosure case.
>
> You owe me a great deal of money, and I'm not going to let you cheat me out of being paid for my work.
>
> I find it hard to believe that you think that I would just walk away and let you do that.

> You appear to be very good at trying to evade paying your bill obligations.
>
> Furthermore, I can not withdraw from the case unless the Court permits me to do so, which the Judge may refuse to do at this late point. I would need to file a Motion to Withdraw, and I'm not doing any further work for you until I get paid, including such a Motion.
>
> Any work I need to do to withdraw from the case from this point on will be billed to you at the rate of $ 250.00 per hour.
>
> After you pay me in full for my work, the charge to copy your file will be $ 150.00. That's based on my actual expenses incurred to copy voluminous records.
>
> My guess is that you can't afford to pay me any of the above amounts, so it looks like I won't be withdrawing from the case.
>
> I'm sure that it will be a waste of my time to even prepare a bill for you.
>
> Ray Eichenberger

(Chilton Ex. 2, attached to May 25, 2017 Chilton Aff.) Several days later, on April 23, Chilton wrote Eichenberger stating in relevant part:

> My attorney and I would [like to] know what [i]s going on if you would give me my file back. It is an ethics violation for you to refuse to withdraw. I want to make sure that you are clear on that and you cannot try to use denial later. It is a violation to hold onto my documents as well. Will you sign the substitution of counsel or are you going to make this situation worse for all parties involved?

(Chilton Ex. 16, attached to May 25, 2017 Chilton Aff.) Eichenberger responded the next day:

> Cindy,
>
> I will repeat this a final time-
>
> I plan to attend the mediation on Monday morning of next week.
>
> I do not intend to withdraw from the [contingency] matter.

Let me know who this new attorney is- I'll be more than happy to file a lawsuit against him or her due to interference with my contractual relationships.

You haven't offered to secure my work on the [contingency] case at all, and most certainly not in any manner that is fair and reasonable to me.

That being the case, and since you are the one who breached our contingent Fee Agreement by failing to cooperate with me, I have no obligation to withdraw.

And, after you pay me the money that you owe me, I still have to seek permission from the Judge to withdraw from the case, which he may or may not grant at this late hour.

Ray Eichenberger.

(Chilton Ex. 17, attached to May 25, 2017 Chilton Aff.)

{¶ 13} On April 25, 2012, Chilton filed a pro se motion requesting that Eichenberger be dismissed as her counsel. (May 26, 2017 Tawney Exs. at 7.) Two days later, on April 27, 2012, the judge in the contingent fee case granted the motion and dismissed Eichenberger. *Id.* at 8-9.

{¶ 14} On July 5, 2016, the trial court in this case denied Eichenberger's motion for summary judgment. (July 5, 2016 Decision & Entry.) It found that Eichenberger's interpretation of his fee agreement (that he was entitled to transform the contingency into an hourly rate and recover even in the event of no recovery by the client) was unethical and against public policy. *Id.* at 14-15. It found genuine disputes of fact as to how much money was owed in respect to the foreclosure litigation that precluded Eichenberger from being granted summary judgment. *Id.* at 15-16.

{¶ 15} On October 20, 2017, the trial court granted Chilton and Tawney's motions for summary judgment. (Oct. 20, 2017 Decision & Entry.) The trial court concluded that Tawney had presented unrebutted evidence that, as a business competitor of Eichenberger, whatever extent he interfered in the relationship between Eichenberger and Chilton was privileged as legitimate competition. *Id.* at 19-23. The court reiterated that Eichenberger's argument that his contingent fee agreement entitled him to transform the contingency into an hourly rate and recover even in the event of no recovery by the client was unethical and against public policy. *Id.* at 24-28. It held that recovery could only be had by Eichenberger

in the event of no recovery by Chilton if Eichenberger produced evidence that Tawney and Chilton failed to recover in the contingent fee case as a result of their bad faith. *Id.* at 28. However, Eichenberger had not made such an allegation. *Id.* With respect to the fees allegedly owed in respect to the foreclosure defense, the trial court found that Chilton, as a matter of law, could not have breached the contract by failing to permit an appeal. *Id.* at 32. The court also found that Eichenberger had not met his reciprocal burden to show that the work he did to earn the fees he alleged he was owed was reasonable and necessary or that the total fees alleged were, as a whole, reasonable. *Id.* at 32-43.

{¶ 16} Eichenberger now appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 17} Eichenberger assigns three errors for our review:

> [1.] THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY GRANTING THE SUMMARY JUDGMENT TO DEFENDANT CLARK CONCERNING THE PLAINTIFF'S CAUSE OF ACTION AGAINST HER FOR ATTORNEY'S FEES INCURRED IN THE FORECLOSURE CASE.

> [2.] THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY GRANTING THE SUMMARY JUDGMENT TO DEFENDANT CLARK CONCERNING THE PLAINTIFF'S CAUSE OF ACTION AGAINST HER FOR ATTORNEY'S FEES INCURRED IN THE CONTINGENT FEE CASE AGAINST HER ACCOUNTANT- THE OHIO SUPREME COURT HAS HELD THAT FEES IN SUCH MATTERS SHOULD BE RECOVERED ON A QUANTUM MERUIT BASIS.

> [3.] THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY GRANTING THE SUMMARY JUDGMENT TO DEFENDANT TAWNEY ON THE PLAINTIFF'S CAUSE OF ACTION AGAINST HIM FOR INTERFERENCE IN PLAINTIFF'S CONTRACTUAL RELATIONSHIP WITH DEFENDANT CLARK. THE FACTS OF THE CASE CREATED A QUESTION OF FACT CONCERNING THE INVOLVEMENT OF DEFENDANT TAWNEY AND MADE THE ISSUE NOT SUBJECT TO SUMMARY JUDGMENT.

## III.  DISCUSSION

### A.  Standard of Review

{¶ 18}  Ohio Rule of Civil Procedure 56(C) provides that:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The Supreme Court of Ohio has explained:

> Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 Ohio Op. 3d 466, 364 N.E.2d 267. The burden of showing that no genuine issue of material fact exists falls upon the party who files for summary judgment. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 294, 1996 Ohio 107, 662 N.E.2d 264.

*Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, ¶ 10; *see also, e.g., Esber Bev. Co. v. Labatt United States Operating Co., L.L.C.*, 138 Ohio St.3d 71, 2013-Ohio-4544, ¶ 9.

{¶ 19}  The Supreme Court has also discussed in detail the relative burdens of movant and nonmovant:

> [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a

> genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.

*Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). In deciding summary judgment, the trial court must give the nonmoving party "the benefit of all favorable inferences when evidence is reviewed for the existence of genuine issues of material facts." *Byrd* at ¶ 25. When reviewing a trial court's decision on summary judgment, our review is de novo and we therefore apply the same standards as the trial court. *Bonacorsi v. Wheeling & Lake Erie Ry.*, 95 Ohio St.3d 314, 2002-Ohio-2220, ¶ 24.

### B. First Assignment of Error – Whether the Trial Erred by Granting Summary Judgment to Chilton in Regard to the Fees Allegedly Owed in the Foreclosure Case

{¶ 20} Despite the fact that Eichenberger never produced an original or even a photocopy of an original fee agreement with respect to the foreclosure case, Chilton admitted the existence of a contract and did not dispute that the retyped or conformed version Eichenberger submitted was accurate in its essential details. *Compare* Compl. at ¶ 2-3 *with* May 12, 2016 Chilton Answer at ¶ 2-3; *see also* Foreclosure Fee Agreement, Ex. to Compl. Consequently, it is undisputed that Eichenberger and Chilton had a contract whereby Chilton would pay for legal services at the rate of $200 per hour to be paid in on-demand retainers during the course of the litigation. (Foreclosure Fee Agreement, Ex. to Compl.)

{¶ 21} Eichenberger avers that Chilton did not pay her bill in full; Chilton avers that she made payments of some amounts but that the final bill was erroneous and so was not paid in full. *Compare* June 9, 2017 Eichenberger Aff. at ¶ 8 *with* May 25, 2017 Chilton Aff. at ¶ 6, 12. Correspondence from Eichenberger states a different amount due than is reflected in his final bill. *Compare* Chilton Ex. 2, attached to May 25, 2017 Chilton Aff. *with* Chilton Ex. 7, attached to May 25, 2017 Chilton Aff. Thus, summary judgment could not be granted in favor of Eichenberger because the summary judgment record does not show undisputed facts entitling him to recover an undisputed amount as a matter of law. Hence, the trial court did not err in refusing summary judgment to Eichenberger.

{¶ 22} The remaining question is whether Chilton's motion for summary judgment should have been granted with respect to the foreclosure fee agreement. As the movant, Chilton bore the initial burden of informing the trial court of the basis for her motion and

identifying those portions of the record that demonstrated the absence of a genuine issue of material fact that would deny Eichenberger at least one essential element of his claim. *Dresher*, 75 Ohio St.3d at 293. Chilton succeeded in this regard on the issue of damages. She argued that Eichenberger was unable to prove that the bills he produced were reasonable. She averred that she made some payments to Eichenberger but that the final bill included "multiple errors, excessive fees, and charg[ed] fees to the wrong case." (May 25, 2017 Chilton Aff. at ¶ 13; May 25, 2017 Chilton Mot. for Summ. Jgmt. at 8-11.) The burden then shifted to Eichenberger to show at least a genuine issue of material fact on that point to avoid summary judgment being granted against him. Civ.R. 56(E); *Dresher* at 293. Simply put, Eichenberger needed to produce "facts as would be admissible in evidence," that Chilton owed more than the amount she paid. Civ.R. 56(E); *Dresher* at 293. He did not do this. Instead, he stated in his affidavit that, "[a]ll of the legal work performed by [Eichenberger] on behalf of [Chilton] was reasonable and necessary in both [cases]." (June 9, 2017 Eichenberger Aff. at ¶ 15.)

{¶ 23} The Ohio Rules of Professional Responsibility prohibit charging clearly excessive fees and contain factors for determining whether a fee is clearly excessive:

> A lawyer shall not make an agreement for, charge, or collect an illegal or clearly excessive fee. A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. The factors to be considered in determining the reasonableness of a fee include the following:
>
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;

> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
>
> (8) whether the fee is fixed or contingent.

Prof.Cond.R. 1.5(a)(1) through (8). Rather than discuss these factors, Eichenberger opined in his affidavit that his time spent on both of Chilton's cases was necessary and reasonable. (June 9, 2017 Eichenberger Aff. at ¶ 15.) His affidavit additionally justifies the fees charged only by stating that hourly rate of $200 was "very reasonable for an attorney of [Eichenberger]'s experience, which is over thirty-five (35) years of practicing law." *Id.* at ¶ 16. He argues that this conclusory testimony as his own expert is sufficient evidence to meet his reciprocal burden under *Dresher* and Civ.R. 56(E). (Eichenberger Brief at 24.) We do not agree.

{¶ 24} Attorney testimony as to the reasonableness of the attorney's own bills has been permitted in cases where the client did not, during the course of the representation, question the reasonableness of the bills provided. *See Baker & Hostetler, LLP v. Delay*, 10th Dist. No. 08AP-1007, 2009-Ohio-2507, ¶ 30, citing *Reminger & Reminger Co., L.P.A. v. Fred Siegel Co., L.P.A.*, 8th Dist. No. 77712, 2001 WL 210024, 2001 Ohio App. LEXIS 760, *19-20 (March 1, 2001); *Dwight D. Brannon & Assocs. v. Barnard*, 7th Dist. No. 16693, 1997 WL 797712, 1997 Ohio App. LEXIS 5935, *7-9 (Dec. 31, 1997); *Thomas & Boles v. Burns*, 8th Dist. No. 64995, 1994 WL 110950, 1994 Ohio App. LEXIS 1390, *21-22 (March 31, 1994). However, here the undisputed evidence shows that Chilton did complain about the reasonableness of the amounts Eichenberger attempted to charge her while the litigation was ongoing. (Chilton Ex. 5, attached to May 25, 2017 Chilton Aff.) In such circumstances, courts have required "independent expert testimony" concerning the reasonableness of the fees. *Joseph G. Stafford & Assocs. v. Skinner*, 8th Dist. No. 68597, 1996 WL 631112, 1996 Ohio App. LEXIS 4803, *23-24 (Oct. 31, 1996) (collecting and comparing cases). Even if Eichenberger had been able to qualify on the basis of experience as his own expert, he was obviously not independent. *See* Evid.R. 702. Having failed to produce sufficient "facts as would be admissible in evidence" on the topic of whether his billed fee was reasonable, Eichenberger failed to meet his reciprocal burden under *Dresher*.

Civ.R. 56(E); *Dresher* at 293. He averred that Chilton never paid the full bill but never presented proper independent expert evidence to create a genuine issue of material fact as to whether his full bill was a reasonable fee that could be collected. In this situation, it was Eichenberger's responsibility to do that in response to Chilton's motion for summary judgment.

{¶ 25} This Court has previously noted:

> " 'A lawyer engaging in clear and serious violation of duty to a client may be required to forfeit some or all of the lawyer's compensation for the matter.' " [*In re*] *Fraelich*[, 11th Dist. No. 2000-T-0016, 2004-Ohio-4538 at ¶ 23], quoting Restatement of the Law 3d, Governing Lawyers (2000), Section 37. Similarly, " '[a] lawyer who does not at all times represent the client with undivided fidelity is not entitled to compensation for his or her services[.]" [*King v.* ]*White*[, 962 P.2d 475, 486 (Kan. 1998)], quoting 7 Am.Jur.2d, Attorneys at Law Section 279, Fidelity and professional competence. " 'An attorney who is guilty of actual fraud or bad faith toward a client * * * is not entitled to any compensation for his or her services.' " *Id.*

*State v. Silverman*, 10th Dist. No. 05AP-837, 2006-Ohio-3826, ¶ 159. In this case, far from rendering valuable legal advocacy for which Eichenberger could justifiably expect to be compensated, Eichenberger frequently acted in an unprofessional manner toward his client.

{¶ 26} For example, Eichenberger alleged that Chilton breached the fee agreement by not permitting him to appeal her case. (Compl. at ¶ 4, 7; May 25, 2017 Chilton Aff. at ¶ 7-8.) But the client, not the attorney, holds the reins in making the decision about whether to extend litigation by filing an appeal. Prof.Cond.R. 1.2(a); *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Rules of Professional Conduct also require that "[a] lawyer shall act with *reasonable* diligence and promptness in representing a client." (Emphasis sic.) Prof.Cond.R. 1.3. That obligation persists despite "opposition, obstruction, or personal inconvenience to the lawyer." Prof.Cond.R. 1.3, comment [1]. In other words, "[a] lawyer should carry through to conclusion all matters undertaken for a client, unless the client-lawyer relationship is terminated as provided in Rule 1.16." Prof.Cond.R. 1.3, comment [4]. Yet, by Eichenberger's own admission, when Chilton allegedly failed to pay to his satisfaction on the foreclosure defense case, he ceased work (but did not withdraw) on the contingent fee case, in a visibly coercive effort to force payment of what he believed he

deserved. (June 9, 2017 Eichenberger Aff. at ¶ 9.) Finally, Ohio Rule of Professional Conduct 1.16 requires that a lawyer "shall withdraw" when discharged by the client and requires counsel, on termination, to "promptly" deliver to the client all client papers and property including "correspondence, pleadings, deposition transcripts, exhibits, physical evidence, expert reports, and other items *reasonably* necessary to the client's representation." (Emphasis sic.) Prof.Cond.R. 1.16(a)(3), (d). When Chilton sought to discharge Eichenberger from all work on her behalf after he refused to work on the contingent case when she protested the case with the hourly bill, he refused to undertake his duty to withdraw in either case and held Chilton's files hostage for the better part of one year. (Chilton Exs. 2, 17, attached to May 25, 2017 Chilton Aff.; June 9, 2017 Eichenberger Aff. at ¶ 10, 23; May 26, 2017 Tawney Exs. at 7-9.)

{¶ 27} The trial court did not err in holding that a question of fact about the amount allegedly owed prevented Eichenberger from being awarded summary judgment. It also did not err in holding that, under the unusual factual circumstances in this case, Eichenberger's failure to present independent and more-than-conclusory expert evidence about the reasonableness of his fee made it impossible, as a matter of law, for his claim to survive Chilton's summary judgment motion. Eichenberger's first assignment of error is overruled.

### C. Second Assignment of Error – Whether the Trial Court Erred in Holding that Eichenberger Could not, as a Matter of Law, Recover Under the Contingent Fee Agreement where no Contingency had Occurred

{¶ 28} The Supreme Court has stated:

1. A client has an absolute right to discharge an attorney or law firm at any time, with or without cause, subject to the obligation to compensate the attorney or firm for services rendered prior to the discharge.

2. When an attorney representing a client pursuant to a contingent-fee agreement is discharged, the attorney's cause of action for a fee recovery on the basis of quantum meruit arises upon the successful occurrence of the contingency.

*Reid v. Lansberry*, 68 Ohio St.3d 570 (1994), paragraphs one and two of the syllabus.

{¶ 29} In this case, Eichenberger's own complaint and Chilton's answer establish that he had a contingent fee agreement with Chilton. (Chilton Answer at ¶ 3; Compl. at ¶ 3.) And his own affidavit makes clear that the specified contingency—her recovery in the suit

against her former accountant—never occurred because she lost the case. (June 9, 2017 Eichenberger Aff. at ¶ 14; Contingent Fee Agreement.) Thus, Eichenberger cannot recover with a quantum meruit theory under *Reid*.

{¶ 30} Eichenberger argues that, notwithstanding the fact that the contingency never occurred, he is entitled to recover because of the Supreme Court's decision in *Fox & Assocs. Co., L.P.A. v. Purdon*, 44 Ohio St.3d 69 (1989). Eichenberger states in his brief before this Court at pages 29-30 that the trial court "obviously had no inkling of the existence of the holding" in *Fox* because if it had "properly applied that case" then it could not have ruled against him. We hold that *Fox* does not conflict with *Reid*. The only reason the attorney-plaintiffs in *Fox* were entitled to recover anything from successor counsel in quantum meruit was because the client recovered; in essence, the contingency triggered. *Fox* at 70. Not only is Eichenberger not entitled to recover in the absence of a "successful occurrence of the contingency," contingency fee contracts which purport to entitle an attorney to recovery whether or not the client recovers have been found by the Supreme Court to be unethical. *Cuyahoga County Bar Assn. v. Levey*, 88 Ohio St.3d 146, 148 (2000).

{¶ 31} We overrule Eichenberger's second assignment of error.

### D. Third Assignment of Error – Whether the Trial Court Erred in Granting Tawney Summary Judgment on Eichenberger's Claim that Tawney Interfered in his Contractual Relationship with Chilton

{¶ 32} "In order to recover for a claim of intentional interference with a contract, one must prove (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415 (1995), paragraph two of the syllabus. The Supreme Court has recognized that competition (if the competitor does not employ wrongful means or create or continue an unlawful restraint of trade) can be a justification for interference in a contract and will defeat a claim of tortious interference in a contract where the contract was terminable at will. *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 179-80 (1999); *see also* Restatement of the Law 2d, Torts, Section 768. It has also recognized that clients have a right to terminate counsel in favor of new counsel and, thus, that the "privilege of fair competition has been recognized in the context of the legal profession." *Siegel* at 180, citing

*Reid* at 570; *Ramirez v. Selles*, 784 P.2d 433 (Ore.1989); *Koeppel v. Schroder*, 122 A.D.2d 780, 782 (N.Y.1986); Restatement of the Law 2d, Torts, Section 768.

{¶ 33} Tawney has explained in his affidavit how Chilton became frustrated with Eichenberger and acted to terminate him in favor of hiring Tawney. (May 26, 2017 Tawney Aff. at ¶ 7-10.) The correspondence in the summary judgment record between Eichenberger and Chilton clearly shows that Chilton became frustrated with Eichenberger's behavior and fired him. (Chilton Exs. 2-5, 16-17, attached to May 25, 2017 Chilton Aff.) The correspondence shows (and Tawney's affidavit admits) that Chilton was in communication with Tawney before she filed the motion to dismiss Eichenberger on April 25, 2012. (Chilton Ex. 16, attached to May 25, 2017 Chilton Aff.; Tawney Aff. at ¶ 7.) However, utterly lacking from Eichenberger's reciprocal submission to defend himself against summary judgment is any fact to suggest that this contact between Tawney and Chilton was anything other than permitted, justifiable competition.

{¶ 34} Eichenberger's third assignment of error is overruled.

## IV. CONCLUSION

{¶ 35} Chilton disputed the amounts billed for legal fees for which Eichenberger claims payment is owed. Eichenberger behaved unprofessionally toward Chilton in attempting to collect his fees pre-litigation. In attempting to collect his fees from Chilton through subsequent litigation, Eichenberger averred that Chilton had failed to pay the full billed amount, but Eichenberger did not meet his burden of establishing both the reasonableness and fairness of the fees. Chilton was also entitled to summary judgment to prevail over Eichenberger's contingency fee claims because Eichenberger could not legally recover fees in the contingent fee case when the contingency (Chilton's recovery) never occurred. Finally, Tawney was entitled to summary judgment because Tawney did not interfere in the contractual relationship between Eichenberger and Chilton. Accordingly, we overrule all of Eichenberger's assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and SADLER, JJ., concur.

_____